**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE,<br><br>            Appellant,<br>vs.<br><br>EB HOLDINGS II, INC,<br><br>            Appellee. | Case No.: 2:20-cv-01311-GMN<br><br>Bankr. Case No. 19-16364-MKN<br><br>**ORDER** |

The United States of America Department of the Treasury – Internal Revenue Service (the "IRS") appeals from the Final Order of the United States Bankruptcy Court for the District of Nevada in case number 19-16364-MKN. The IRS filed an Opening Brief, (ECF No. 5), Appellee EB Holdings II, Inc. ("Debtor") filed an Answering Brief, (ECF No. 9), and the IRS filed a Reply Brief, (ECF No. 12).

Also pending before the Court is Debtor's Motion for Leave to Correct or Supplement the Record, (ECF No. 8). The IRS filed a Response, (ECF No. 11), and Debtor filed a Reply, (ECF No. 13).

For the reasons discussed below, the Motion for Leave to Correct or Supplement the Record is **GRANTED**, and the Bankruptcy Court's Order is **AFFIRMED**.

**I.    BACKGROUND**

The IRS's present appeal concerns the Bankruptcy Court's reconsideration of the allowed amount of the loan claims (the "PIK Loan Claims") by Debtor's primary lenders (the "PIK Lenders") in Debtor's confirmed reorganization plan. The Motion for Reconsideration before the Bankruptcy Court addressed the applicable currency exchange rate used to calculate

the PIK Loan Claims, given the PIK Lenders advanced the subject loan (the "PIK Loan") in Euros.

On April 5, 2007, respectively, the PIK Lenders advanced the PIK Loan to EB Holdings, Debtor's predecessor, in the amount of €600,000,000. (*See* Mot. Reconsider 3:19–22, Ex. 26 to Op. Br., ECF No. 5-3). At the time the PIK Lenders advanced the loan, the funds equaled approximately $802,324,200. (*Id.*) (citing contemporaneous exchange rate published in the Wall Street Journal at n.2). The PIK Loan further provided for semi-annual interest payments. (*See* PIK Loan Agreement §§ 8.1, 9.1, Ex. 1 to Mot. Leave File, ECF No. 8-1).[1]

Prior to Debtor's voluntary bankruptcy case from which this appeal originates, Debtor's controlling shareholders and the PIK Lenders engaged in years of litigation. (Op. Br. 2:18–20, ECF No. 5). The PIK Lenders sought to compel Debtor's bankruptcy in an involuntary Chapter 11 proceeding commenced on May 18, 2017. (*Id.* 18:20–22); *see in re EB Holdings II, Inc.*, No. 17-126-42-MKN (Bankr. D. Nev.). Ultimately, Debtor and the PIK Lenders negotiated a pre-packaged voluntary Chapter 11 bankruptcy plan settling the PIK Lenders' claims, and the involuntary proceedings were dismissed on October 1, 2019, one day after the underlying voluntary bankruptcy case commenced. (*Id.* 2:22–3:5).

On September 30, 2019, Debtor filed a voluntary petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Nevada. (*See* Bankr. Pet., Ex. 1 to Op. Br., ECF No. 5-2). In the schedules attached to the Petition, Debtor designated estimates for the amounts owed to the PIK Lenders as non-contingent, liquidated, and undisputed claims. (*Id.* at 16–24). Debtor's pre-packaged Chapter 11 reorganization plan (the "Plan")

---

[1] The Court **GRANTS** Debtor's Motion to Supplement the Record, (ECF No. 8), to include the PIK Loan Agreement. The Court finds that the Agreement was properly before the Bankruptcy Court as it was judicially noticeable from the involuntary bankruptcy proceeding, and Debtor cited the relevant docket entry from the involuntary proceeding to the Bankruptcy Court in the underlying case. (*See* Debtor's Mot. Reconsideration n.3) (citing PIK Loan Agreement as Ex. A to Dkt. No. 6 in involuntary proceeding); Fed. R. Evid. 201.

1  denominated the PIK Loan Claims to include "$2,494,847,827.02 *plus* any accrued and unpaid
2  interest thereon after August 27, 2019 (including any applicable default interest), *plus* any
3  unpaid fees, costs, charges and other amounts payable under the PIK Loan Credit Agreement
4  up to, but not including, the Petition Date." (Pre-Packaged Chapter 11 Plan 27:17–24, Ex. 2 to
5  Op. Br., ECF No. 5-2) (emphasis original).  Debtor calculated the amount of the balance by
6  "applying an exchange rate as of August 27, 2019," the day Debtor's noticing agent solicited
7  the disclosure statement for the Plan. (*Id.* at 27 n.1); (Disclosure Statement, Ex. 3 to Op. Br.,
8  ECF No. 5-2).  No party objected to the PIK Loan Claims, and they were deemed allowed.[2]  In
9  exchange for the extinguishment of the PIK Loan Claims, the PIK Lenders received pro rata
10 shares of 86.811% of stock in the reorganized Debtor, which was automatically exchanged for
11 100% of the Class B equity in EBT NewCo, LLC, an entity created as part of Debtor's
12 reorganization. (Pre-Packaged Chapter 11 Plan 27:25–28:5, Ex. 2 to Op. Br.).  The Bankruptcy
13 Court confirmed the Plan on November 6, 2019. (*See* Order Approving Debtor's Disclosure
14 Statement and Confirming the Plan, Ex. 23 to Op. Br., ECF No. 5-3).

15     On May 7, 2020, Debtor filed the Motion for Reconsideration under 11 U.S.C. § 502(j)
16 and Federal Rule of Bankruptcy Procedure 3008 requesting that the Bankruptcy Court exercise
17 its discretionary authority to increase the allowed PIK Loan Claims from $2,494,487,827.02 to
18 $3,001,540,448.00. (Mot. Reconsider 3:6–17, Ex. 26 to Op. Br.).  The Motion sought to change
19 the applicable currency exchange rate from the August, 27, 2019, date previously applied to the
20 rate to April 5, 2007, the date the PIK Loan Agent advanced the PIK Loan. (*Id.*).  The Motion
21 did not seek to modify the Plan in any other material respect as it did not change the
22 consideration that the PIK Lenders received in exchange for extinguishing the PIK Loan

---

[2] The Court notes that interested parties were afforded little time to object to the Plan because the Plan was filed on September 30, 2019, and on October 10, 2019, the Bankruptcy Court set a *nunc pro tunc* deadline of October 7, 2019, to object to the Plan. (*See* Notice of Hearing, Ex. 19 to Op. Br., ECF No. 5-3).  However, the IRS does not contend that the Bankruptcy Court's briefing schedule provides cause for appellate relief.

Claims. (*Id.*). Given that the 2019 exchange rate was favorable to the Debtor—as it appeared to provide a windfall from the purchasing power of the Euro declining relative to that of the Dollar—the use of the 2007 exchange rate threatened to reduce Debtor's future tax liability, and the IRS therefore opposed the Motion. (IRS Obj., Ex. 28 to Op. Br., ECF No. 5-3).  In its Objection, the IRS argued that the Motion: (1) was an improper motion for declaratory judgment regarding debtor's tax liability; (2) did not provide evidence for the relief sought; (3) improperly sought to modify a substantially consummated reorganization plan; and (4) abused the reconsideration process. (*Id.*).

On June 17, 2020, the Bankruptcy Court held a hearing on the Motion for Reconsideration (the "Motion"). (*See* June 17, 2020 Hearing Transcript ("Hearing"), Ex. 30 to Op. Br., ECF No. 5-3).  After oral argument, the Bankruptcy Court granted the Motion after analyzing the relevant factors—analogous to those under Federal Rule of Civil Procedure 60(b)—on the record. (*Id.*).  The Bankruptcy Court concluded that no party would be prejudiced given that the Motion was filed shortly after the effective date of the Plan; no party with an interest would be prejudiced as no claims were altered by the proposed amendment; the efficient administration of the court would not be impacted as the Motion in no way modified the Plan; and Debtor brought the Motion in good faith as it could have entered into the same agreement with the PIK Lenders when negotiating the Plan. (*Id.*).  The IRS now appeals the Bankruptcy Court's grant of the Motion.

**II.      STANDARD OF REVIEW**

The Court reviews the Bankruptcy Court's reconsideration of the PIK Loan Claims under § 502(j) for abuse of discretion. *See in re Consol. Pioneer Mortg.*, 178 B.R. 222, 225 (9th Cir. BAP 1995).  A court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. S*ee*

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## III.   DISCUSSION

In its Opening Brief, the IRS argues that the Court should reverse the Bankruptcy Court's reconsideration of the PIK Loan Claims. (*See generally* Op. Br., ECF No. 5). The IRS argues: (1) the Bankruptcy Court erred by failing to consider any evidence of the currency exchange rate underlying the allowed claim sought in the Motion for Reconsideration; (2) the Bankruptcy Court acted without jurisdiction because Debtor's Motion effectively sought a declaratory judgment, but the prior confirmation of the Plan terminated the pendency of a live case or controversy; (3) the Court's Order violated the Anti-Injunction Act because the Motion sought to restrain a tax assessment; (4) the Bankruptcy Court's Order improperly modified a substantially consummated reorganization plan; and (5) the Motion was an abuse of the claim allowance and reconsideration process. (Op. Br. 8:13–16:18).

In its Answering Brief, Debtor raises the threshold issue of whether the Court should dismiss the Appeal for lack of prudential standing. (Ans. Br. ¶¶ 49–53, ECF No. 9). Debtor also argues that the Bankruptcy Court issued its Order on a complete evidentiary record, properly exercised its discretion in granting relief, and the Order neither constituted a declaratory judgment, violation of the Anti-Injunction Act, claim amendment, nor abuse of bankruptcy process. (*Id.* ¶¶ 22–48).

The Court's below discussion first addresses Debtor's standing to raise the instant appeal. After concluding that Debtor has standing, the Court addresses Debtor's objections to the decision below.

### A.   Prudential Standing

Debtor argues that the IRS lacked standing to raise its Objection below and lacks standing to raise the instant Appeal because, under a prudential standing analysis, the IRS's

Objection is not within the zone of interests that bankruptcy law protects. (Ans. Br. ¶¶ 49–53). However, the United States Supreme Court closed the door on prudential standing challenges based exclusively on a zone-of-interests theory in *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). In *Lexmark*, the Supreme Court explained that whether a party asserts a claim within the zone of interests protected by a statute presents a merits question—whether a particular statute authorizes the action—but not whether a party has standing to do so. *Id.* (quoting *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–76 (D.C. Cir. 2013) (Silberman, J., Concurring) ("As Judge Silberman of the D. C. Circuit recently observed, ''prudential standing' is a misnomer' as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute.'")). Accordingly, as the zone-of-interest argument is Debtor's sole objection to the IRS's standing to raise this Appeal, the Court finds the IRS has standing. Given Debtor does not argue that the Bankruptcy Code and applicable rules of procedure did not authorize the IRS's Objection in the Bankruptcy Court or this Appeal, the Court need not conduct a zone-of-interests analysis.

### B. The IRS's Objections

The IRS contends that the Bankruptcy Court lacked jurisdiction to grant the Motion for Reconsideration, and even if the Bankruptcy Court properly exercised jurisdiction, that it erred in granting the Motion. The IRS argues that the Bankruptcy Court lacked jurisdiction to grant the Motion because the Declaratory Judgment Act and Anti-Injunction Act deprived Debtor of standing. (Op. Br. 10:11–13:2). The IRS also argues that even if Debtor had standing, the Order abused its discretion by modifying a confirmed reorganization plan and abusing the reconsideration process. (*See* Op. Br. 13:3–16:18). The Court first considers the IRS's standing objections.

//

i. Standing

The IRS argues that because Debtor allegedly brought the Motion "for tax purposes only" then "it sought, in effect, a prohibited form of declaratory judgment concerning a Debtor's hypothetical tax liability." (Op. Br. 10:12–16). The IRS argues that the Motion, which only provides clarification of an allowed claim amount, does not address an actual case or controversy, and Debtor therefore lacked standing to bring the Motion. (*Id.* 10:23–12:9). The argument has no support in law.

Pleadings, not motions, seek declaratory relief. There is no such thing as a motion for declaratory judgment. *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (internal quotation omitted) ("A party may not make a motion for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment.") (emphasis in original); 10B WRIGHT, MILLER & KANE, FED. PRACTICE AND PROCEDURE: CIVIL § 2768 (3d ed. 1998) ("the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions"). Debtor's Motion may affect its eventual tax liability. However, the downstream effect of the Motion for Reconsideration does not render it a motion for declaratory judgment.[3] The Declaratory Judgment Act therefore did not deprive Debtor of standing to seek reconsideration of the allowed amount of the PIK Loan Claims under the Plan.

Next, the IRS argues that the Motion violates the Anti-Injunction Act which provides "no suit for the purpose of restraining the assessment . . . of any tax shall be maintained in any court by any person." (Op. Br. 16:10–19). The IRS's argument again confuses the effect of pleadings and motions. The "purpose" of a suit is tied to its pleadings. *Cf. Hutchinson v. United States*, 677 F.2d 1322, 1326 (9th Cir. 1982) (indicating that the Anti-Injunction Act

---

[3] Otherwise, *any* reconsideration of a monetary award that changes the effective tax rate applied to the award would be a declaratory judgment regarding tax liability.

extends to suits seeking injunctions against tax assessment or collection). The purpose of Debtor's suit was plainly to reorganize and avail itself of the protections of Chapter 11 of the Bankruptcy Code, not to restrain the assessment or collection of a tax related to gains made from fluctuations in currency exchange rates. Accordingly, the Anti-Injunction Act does not apply to the Motion for Reconsideration. The Court next considers whether the Bankruptcy Court abused its discretion by granting a Motion for Reconsideration that enlarged the PIK Lenders' allowed claims.

### ii. Modification Objections

The IRS argues that granting the Motion for Reconsideration improperly modified the confirmed reorganization plan. (Op. Br. 13:3–15:5). The IRS provides no authority demonstrating that a claim amendment is a plan amendment. *Compare* 11 U.S.C. § 502(j) (allowing reconsideration of an allowed claim); *with* 11 U.S.C. § 1127(b) (permitting plan modification before substantial consummation). Here, the Plan discharged the PIK Lenders' claims in exchange for 86.811% of stock in the reorganized debtor, which was automatically exchanged for 100% of the Class B equity in EBT NewCo, LLC, an entity created as part of Debtor's reorganization. (Pre-Packaged Chapter 11 Plan 27:25–28:5, Ex. 2 to Op. Br.). The reconsideration of the PIK Loan Claims had no effect whatsoever on the benefits conferred to the PIK Lenders or the claims of other creditors under the Plan. Accordingly, the Court finds that the Bankruptcy Court did not improperly modify a substantially consummated reorganization plan by granting the Motion for Reconsideration.

The IRS also argues, without any legal authority, that the Motion "constituted abuse of the bankruptcy claim reconsideration process." (Op. Br. 15:6–16:18). The Bankruptcy Code plainly allows reconsideration of creditors' allowed claims. *See* 11 U.S.C. § 502(j). Bankruptcy courts have substantial discretion to grant motions for reconsideration brought more than ten days after confirmation of a reorganization plan for "cause" that would provide

grounds for relief under Federal Rule of Civil Procedure 60(b). *See in re Consolidated Pioneer Mortg.*, 178 B.R. 222, 227 (9th Cir. BAP 1995). The IRS does not argue that the Bankruptcy Court failed to make a finding of sufficient cause to grant the Motion. Accordingly, the objection is unpersuasive.

          iii.    Evidentiary Objection

The IRS's lone argument of substance concerns the evidentiary record before the Bankruptcy Court when it granted the Motion. The IRS argues that Debtor provided no evidence to support its proffered calculation of the PIK Lenders' allowed claims in support of the Motion for Reconsideration. (Op. Br. 8:13–24). The IRS contends that the Bankruptcy Court erred by analyzing only whether Debtor's Motion satisfied the factors necessary to grant a Motion for Reconsideration, but not whether the record supported the relief sought. (*Id.* 9:1–10:6). As a result, the IRS argues that the Court may reverse the Bankruptcy Court's Order.

In response, Debtor contends that its Motion contained the currency exchange rates underpinning its calculation of the revised allowed claims, which cited a Wall Street Journal database. (Ans. Br. ¶ 25) (citing Mot. Reconsideration 3:21 n.2, Ex. 26 to Op. Br.). Debtor argues that the database provides sufficient evidence because it is capable of judicial notice, and courts regularly take judicial notice of published currency exchange rates, including the Wall Street Journal's database, specifically. (*Id.* ¶¶ 26–27).

The Court agrees. Debtor's Motion for Reconsideration sought to calculate the PIK Lenders' allowed claims on the date the PIK Lenders extended the €600,000,000, April 5, 2007. (Mot. Reconsider 3:19–22, Ex. 26 to Op. Br.). The Motion provided the exchange rate of Euros to U.S. Dollars on that date, which the Wall Street Journal indicated equaled 1:1.3372. (*Id.* 3:21 n.2). The Motion's calculation indicated that the relevant allowed claim for the PIK Lenders, after adding accrued interest, therefore should be $3,001,540,448. (*Id.* 3:6–22, 4:6–12, 12:2–5) (providing calculation in a table). The IRS did not contest the accuracy of Debtor's

1 calculation in this Court or the Bankruptcy Court; rather, the IRS contests the propriety of
2 relying on the Wall Street Journal's published historical currency exchange rates and whether
3 the Bankruptcy Court considered the evidence at all. (IRS Opp. 6:5–16, Ex. 28 to Op. Br.).

4      In its Order, the Bankruptcy Court adopted Debtor's calculation of the PIK Loan Claims.
5 (*See* Order Granting Reconsideration ¶ 2, Ex. 30 to Op. Br., ECF No. 5-3). The Court finds the
6 Bankruptcy Court did not err by relying on the Wall Street Journal citation, which is judicially
7 noticeable evidence, in granting the Motion. Fed. R. Evid. 201; *See, e.g.*, *In re R.M.L., Inc.*, 195
8 B.R. 602, 623 (M.D. Penn. Bankr. 1996) ("I take judicial notice of the exchange rates from
9 Italian lira into United States dollars as published in the Journal of Commerce or the Wall
10 Street Journal, for the dates of the transfers[.]"). The Bankruptcy Court did not cite the
11 exchange rates directly; rather, it noted that it had "reviewed the Motion and all matter
12 submitted therewith." (Order Granting Reconsideration 2:3, Ex. 30 to Op. Br.).

13      Bankruptcy Courts do not have to show their work like high school Algebra students
14 when calculating allowed claims, provided claims' inputs are part of the record and the
15 conclusions are correct. Given that the applicable exchange rates were before the Bankruptcy
16 Court and the IRS does not contest the accuracy of Debtor's calculation, the Bankruptcy Court
17 did not abuse its discretion because its factual findings are neither illogical, implausible, nor
18 without support in inferences that may be drawn from the facts in the record.
19 *TrafficSchool.com, Inc.*, 653 F.3d at 832. Thus, the Court affirms the decision below.
20 //
21 //
22 //
23 //
24 //
25 //

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Court **AFFIRMS** the Order of the Bankruptcy Court.

**IT IS FURTHER ORDERED** that Debtor's Motion to Supplement the Record, (ECF No. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transmit a copy of this Order to the United States Bankruptcy Court for the District of Nevada.

Dated this 11 day of February, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT